IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

KATHI A. TAYLOR,          )
                               )
       Plaintiff,        )
                               )
      v.              )     CIVIL ACTION NO. 1:08-cv-512-SRW
                               )            (WO)
MICHAEL J. ASTRUE, Commissioner   )
of Social Security,        )
                               )
       Defendant.      )

**MEMORANDUM OF OPINION**

Plaintiff Kathi A. Taylor brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and Supplemental Security Income under the Social Security Act.[1]  The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On March 24, 2004, plaintiff filed an application for disability insurance benefits and Supplemental Security Income. On July 18, 2005, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a

---

[1]Plaintiff filed a subsequent claim  for SSI on October 27, 2005, which is not the subject of this opinion.  (R. 310).

decision on August 31, 2005. The ALJ concluded that plaintiff suffered from the severe impairments of "chronic pulmonary disease, depression, and residuals of right calcaneal fractures." (R. 23). He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act.

On September 25, 2006, the Appeals Council denied plaintiff's request for review, and plaintiff appealed the Commissioner's decision to the United States District Court for the Middle District of Alabama. On October 15, 2007, in <u>Taylor v. Astrue</u>, No. 1:06-cv-1055-WC (M.D. Ala. 2007), the District Court remanded for further proceedings. On remand, in a decision rendered on May 2, 2008, the Appeals Council adopted the ALJ's findings, and, in accordance with the Court's order of remand, made supplemental findings regarding the weight assigned to certain medical opinions in the record. Accordingly, the decision of the Appeals Council became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. <u>Davis v. Shalala</u>, 985 F.2d 528, 531 (11th Cir. 1993); <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145

2

(11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff alleges disability due to respiratory problems, depression, and complications from a previous heel fracture.  (R. 83).  In her appeal application, plaintiff alleged that her depression, anxiety, and mood swings have grown more severe. (R. 135).  Plaintiff's alleged onset disability date is April 30, 2001, when she quit her job as a waitress.  (R. 83).

On March 12, 2002, plaintiff presented herself to the Southeast Alabama Medical Center after jumping off the hood of a truck and injuring her right foot and ankle.  She was diagnosed with "comminuted fracture of the calcaneus with the flattening of the posterior calcaneus." (R. 157).  Dr. James P. Dehaven performed an open reduction internal fixation "of the right calcaneous using a lateral calcaneal plate and autologous bone graft" to repair the fracture.  (R. 152).  Dr. Dehaven discharged plaintiff on March 14 with instructions to "continue no weight bearing," to ice and elevate her foot, and to follow up with him in ten days. (R. 150; see Exhibit 1F).  Plaintiff followed up with Dr. Dehaven through July 1, 2002.

Dr. Dehaven noted that plaintiff's "x-rays looks great," her range of motion was "quite good," and that she was "actually doing very well." (R. 167). On July 1, Dr. Dehaven "turn[ed] her loose," prescribed her Lorcet to "take on a sparing basis," and told plaintiff to follow up as needed. (Id.) There is no record of plaintiff's returning to Dr. Dehaven for further treatment.

In connection with a previous application for disability benefits, plaintiff was referred to Dr. Doug McKeown for a psychological evaluation on July 1, 2003. Plaintiff indicated that "her primary difficulties relate to long term depression, trouble walking due to her previous crushed heel and a reported lesion on her lung." (R. 169). She explained to Dr. McKeown that she saw a psychiatrist and psychologist for evaluation while incarcerated in 1995, where she received Prozac and Trazodone for her depression. There is no record of this treatment in the record, and plaintiff did not continue treatment once she was released. Plaintiff further explained that she quit work as a waitress in 2001 because "she was depressed and could not cope with going to work." (Id.). Dr. McKeown opined that plaintiff "appears to be fully capable of meeting activities of daily living and maintaining personal hygiene." (R. 172). Diagnostically she demonstrated a "History of Polysubstance Dependence and Cannabis Abuse," and a "History of Depressive Disorder, currently untreated." (Id.). Further, he stated that "there does not appear to be any specific intellectual deficits and she presents no major difficulties other than a status post previous right crushed heel."[1] (Id.).

---

[1] Dr. McKeown also gave information to plaintiff about local mental health clinics that provided counseling services based on income. (R. 172).

The Disability Determination Service referred plaintiff to Dr. Sam R. Banner on July 2, 2003. Plaintiff complained of shortness of breath, fatigue, and chronic cough, and reported a lesion on her right lung. She further complained of depression on and off for twenty-five years; she reported no motivation, no energy, frequent crying spells, and that she did not socialize with friends. Plaintiff stated that she "has difficulty with prolonged walking and standing due to right foot pain." (R. 173). Dr. Banner noted that plaintiff's lungs were "clear to auscultation all quadrants posterior and anterior," and that her "expiratory phase appeared normal." (R. 174). He noted a limp on the right leg, and that plaintiff's heel/toe walk was "difficult to assess due to right ankle and foot pain." (Id.). He further stated that plaintiff "demonstrated no pain or difficulty getting on and off [the] table," and that "[t]here was no atrophy of any muscle group in upper or lower extremities." (Id.). Dr. Banner's diagnosis was depression, shortness of breath, and chronic right foot and ankle pain. He emphasized that plaintiff needed long term medical care and a psychological evaluation.

On July 7, 2003, plaintiff presented to Flower Hospital to undergo pulmonary function testing. Tests revealed a "moderate obstruction" with "marked postbronchodilator improvement." (R. 178).

Plaintiff was referred to Dr. David Atchley for a disability evaluation on June 2, 2004. Plaintiff's chief complaints were shortness of breath and wheezing, depression, and persistent problems with pain in her right heel. (R. 204). In addition, "she report[ed] a history of mood swings, anxiety attacks, and substance abuse." (Id.). Plaintiff further explained that she "has a very frequent and productive cough," and that she quit work as a waitress in 2001 "due to

depression and persistent problems with her breathing/shortness of breath." (R. 205). Dr. Atchley's examination revealed "expiratory delay and wheezing throughout all lung fields," with "air movement [] decreased throughout." (R. 206). Plaintiff had no atrophy, wasting, or deformity of her extremities (Id.); full range of motion of her joints (R. 208-09); and 4/5 muscle strength in her right lower extremity (R. 206). Her gait was normal, and she was able to toe and heel walk as well as squat. Dr. Atchley noted plaintiff "has numbness and no sensation to light touch or pin prick on the dorsum and dorsolateral surface of the right foot." (R. 207). Dr. Atchley's impression indicated "chronic respiratory problems which could represent untreated asthma, emphysema, COPD, or a combination thereof." He further noted that she "has a history of depression and chronic pain in her right heel," and that her "physical exam is consistent with her complaints and history." (Id.). Dr. Atchley opined that plaintiff "would have some mild difficulty with prolonged standing, sitting and traveling due to her low back and right heel pain . . . [, and] a significant amount of difficulty walking, lifting and carrying due to her respiratory problems." (Id.).

Dr. J. Walter Jacobs performed a consultative psychological examination on June 3, 2004. (Exhibit 9F). Plaintiff complained of shortness of breath, and pain in her right heel; Dr. Jacobs noted that she "has a long history of depression." (R. 210). Dr. Jacobs' evaluation revealed plaintiff's "affect was normal in range and appropriate to the context," and she had experienced "an eight-pound weight loss in recent months." (Id.) Plaintiff "described onset insomnia and fragmentation of sleep due to nocturia," stated that "her energy was poor," and "acknowledged feelings of sadness." (R. 211). He noted plaintiff had feelings of

hopelessness and helplessness, and that her judgment and insight appeared to be fair to poor. Dr. Jacobs concluded that plaintiff was clinically depressed, but she "has made little effort to obtain treatment although readily acknowledging that treatment was very effective while she was incarcerated." (R. 212). His diagnostic impression was major depression, recurrent, mild in Axis I, and personality disorder NOS, cluster B features in Axis II. He stated further that plaintiff "would have a favorable prognosis with appropriate treatment." (R. 212).

A Mental RFC Assessment (Exhibit 10) and a Psychiatric Review Technique Form (PRTF) (Exhibit 11) were completed by Dr. Ellen Eno, a non-examining physician, on June 22, 2004. On the Mental RFC Assessment, Dr. Eno opined that plaintiff "has the ability to understand and remember simple tasks"; "carry out short, simple tasks and maintain attention and concentration for two hour periods"; and that plaintiff's "contact with the general public should be infrequent." (R. 217). On the PRTF, Dr. Eno indicated that plaintiff suffered from Major Depression (R. 222), and Personality D/O NOS (R. 226). Further, she indicated that plaintiff had a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. 229).

Another pulmonary function test was performed on July 19, 2004. The test showed a good forced vital capacity, ranging from 80% to 96% of the predicted value; other indicators all registered below 80% of their predicted values. (Exhibit 12F). A chest x-ray was also administered, and revealed "mild osteoporosis [and] . . . an infiltrate in the right

upper lobe." (R. 234). Plaintiff's CT ratio was 11/27.8 cm, her cardiac silhouette was normal, and her costophrenic angles were clear.

Plaintiff presented herself to Dr. David H. Arnold on October 20, 2004. She reported a history of lung disease, a long history of smoking, and a chronic cough, wheezing, and sputum production. Dr. Arnold noted that several pulmonary tests had been performed, but the results were not available. Plaintiff further reported a long history of depression and mood swings, she was grouchy and irritable, and that she has been on Prozac in the past with improvement. Upon examination, Dr. Arnold noted that plaintiff had "no dyspnea with exertion, no orthopnea," and that she has been able to do "normal daily activities without discomfort." (R. 245). Plaintiff suffered from no excessive mood swings or unusual behavior, and her walking and gait were normal. Plaintiff's chest exam was normal; her lungs were "clear to auscultation and percussion," with "no wheezing, rales, or rhonchi noted." (R. 246). Her range of motion of the upper and lower extremities was normal. Dr. Arnold assessed chronic obstructive pulmonary disease, and noted that is was "most likely as a result of years of smoking." (Id.). He concluded that her "prognosis for improvement is poor," and "her condition is permanent." (Id.).

Plaintiff presented herself to Dr. Arnold again on November 11, 2004. Dr. Arnold noted "mild fine wheezing [] bilaterally, poor air movement[, and] increased AP diameter of [the] chest." (R. 244). He further noted clubbing of the plaintiff's hands. He assessed chronic obstructive pulmonary disease, and completed a Medical Statement Regarding Chronic Obstructive Pulmonary Disease for Social Security Disability Claim Where Smoking is Issue

form at the request of plaintiff's attorney. On this form, Dr. Arnold stated that plaintiff suffered from emphysema, had a significant smoking history and continued to smoke, and that she could reduce her current and future disability if she stopped smoking. (R. 242). He limited plaintiff to 30 minutes of standing at one time; 30 minutes of sitting at one time; 2 hours of work per day; lifting frequently and occasionally only 5 pounds; and no tolerance of dust smoke, and fumes. (R. 243).

There is no record of Plaintiff's seeking medical treatment again until March 21, 2005, when she visited Dr. Arnold. She complained of weakness and fatigue, difficulty sleeping, and a poor appetite. Dr. Arnold's examination revealed normal systems, including clear lungs to auscultation and percussion, no wheezing, rales, or rhonchi noted. He assessed plaintiff with chronic obstructive pulmonary disease and depression and gave her samples of Lexapro. (R. 241).

An administrative hearing was held on July 18, 2005, at which plaintiff and a vocational expert testified. Plaintiff explained that she has become a hermit, that she sleeps 19 hours out of the day because of her depression, and that she cannot interact with people any more because she has no patience, that she cannot be very active because of her wheezing, that she has pain in her right heel every day, and that she can pick up her 15 pound dog, but she could not do that 3 or 4 times a day over an 8 hour period. (R. 273-81). The ALJ posed a hypothetical question to a vocational expert, with limitation to sedentary work and maximum lifting of 10 pounds, frequent lifting of 5 pounds, and the ability to stand 15-20 minutes with a requirement of approximately an hour before standing again; no climbing

ladders or stairs, no exposure to dust or fumes, and no heavy machinery; mild restrictions in the activities of daily living, moderate restrictions in social functioning, mild to moderate restrictions in persistence, concentration and pace; and no history of deterioration in a work or work-like setting.  (R. 283-84).  The vocational expert answered that a person with these limitations could perform the jobs as a bench worker, clerical worker, and a parts inspector.  (R. 284).

In his decision, the ALJ concluded that the plaintiff suffered from the severe impairments of chronic obstructive pulmonary disease, depression, and residuals of right calcaneal fractures. He determined that the plaintiff retained the "residual functional capacity [RFC] to perform sedentary work in an air-conditioned environment that does not involve concentrated exposure to dust, fumes, or hazards and can be done by an individual who has mild-to-moderate deficiencies of concentration." (R. 23).  The ALJ based his conclusion on the "extremely conservative treatment" that plaintiff sought and received, her report that "she was taking no medications for musculoskeletal problems," and her "rather wide range of daily activities." (R. 22).  He noted that, although she has a history of pulmonary disease, the plaintiff has "no history of acute exacerbations or significant clinical findings." (R. 22). The ALJ accorded great weight to the opinions of the reviewing psychologists (Exhibits 6F, 10F, and 11F) when considering plaintiff's mental limitations. Based on plaintiff's limitations, the ALJ concluded that plaintiff could not perform her past relevant work; however, he determined that there is a significant number of jobs in the national economy she can perform, including work as a bench worker, clerical worker, and parts inspector.  (R.

23).

The Appeals Council denied a request for review of the ALJ's decision on September 25, 2006, and plaintiff appealed the decision to the United States District Court for the Middle District of Alabama. The District Court remanded the case to the Commissioner for further findings, with instructions to weigh the medical opinions of Drs. Atchley and Arnold appropriately. <u>Taylor v. Astrue</u>, No. 1:06-cv-1055-WC (M.D. Ala. 2007). On remand, the Appeals Council adopted the ALJ's findings and conclusions regarding whether the claimant was disabled. The Appeals Council weighed the medical opinions, assigning "limited weight" to Dr. Atchley's opinion and "little weight" to Dr. Arnold's opinion. (R. 294). The Council explained that Dr. Atchley's opinion was a result of a one-time consultative examination, and appeared "to have been based as much on the [plaintiff's] subjective complaints as on the examination findings, which were not significant." (<u>Id.</u>). Further, the Council reasoned that Dr. Atchley's opinion does not conflict with the ALJ's RFC assessment. As for Dr. Arnold, the Council stated that "his extremely restrictive opinion . . . is not supported by his treatment notes and examination findings," which were "nearly normal in all three examinations." (<u>Id.</u>).

The plaintiff challenges the Commissioner's final decision, arguing that his RFC assessment is not supported by substantial evidence. (Plaintiff's brief, p. 11). In particular, plaintiff contends that the Appeals Council "rejected the only medical opinions expressed by treating and examining sources[, and] [a]s such, the only medical opinions inconsistent with the ALJ's RFC in which the Appeals Council adopted are from the non-examining DDS

physician." (Id. at 12). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled. See 20 C.F.R. §§ 404.1520, 416.920. If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether, in light of residual functional capacity, age, education, and work experience, the claimant can perform other work.  Id.   At the fifth step of the sequential evaluation process, the burden is on the Commissioner to establish capacity to perform other work and thereby to establish the claimant's residual functional capacity. Id.   However, the ultimate RFC determination is within the authority of the ALJ, and the determination is to be based upon all the relevant evidence, both medical and non-medical, of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1546; SSR 96-8p; Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000).

Here, the ALJ considered all the evidence in the record, including clinical findings, the dearth of treatment, and the plaintiff's reported daily activities.  (R. 22). He properly considered each of the plaintiff's impairments, and made specific adjustments to his RFC for both her pulmonary impairment and her depression.  Further, the RFC assessment in this case is supported by Dr. Atchley's opinion, plaintiff's own testimony, and the overall medical evidence.  The Appeals Council gave Dr. Atchley's opinion only "limited weight," as it resulted from a one-time consultative examination.  (R. 294).  The Appeals Council did explain, however, that his opinion was not inconsistent with the ALJ's RFC determination. Dr. Atchley opined that plaintiff "would have some mild difficulty with prolonged standing,

sitting and traveling due to her low back and right heel pain," and "would likely have a significant amount of difficulty walking, lifting and carrying due to her respiratory problems." (R. 207). These limitations do not indicate that plaintiff is incapable of engaging in any substantial gainful activity. Instead, the opinion of "mild difficulty with prolonged standing and sitting " is consistent with the ALJ's decision, which limited the plaintiff to 6 hours of sitting, and 2 hours of standing and walking (R. 22). This limitation was further restricted in the ALJ's hypothetical to the vocation expert, which included 10-15 minute breaks every 2 hours. (R. 283). Furthermore, the ALJ's decision is consistent with Dr. Atchley's opinion that plaintiff would have "significant amount of difficulty walking, lifting and carrying due to her respiratory problems" – the ALJ limited plaintiff's work environment to an air-conditioned environment involving no concentrated exposure to dust, fumes, or hazards. He further limited her to "sedentary" work. (R. 22). Sedentary work, by definition, involves only occasional walking, and "lifting no more than 10 pounds at a time and occasionally lifting or carry articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a); 416.967(a).

Further, no physician other than Dr. Arnold found that the plaintiff was disabled. The Appeals Council properly discredited Dr. Arnold's opinion and assigned it "little weight." (R. 294). Plaintiff saw Dr. Arnold for medical treatment on only three occasions, one of which was to fill out the medical form at the request of plaintiff's attorney. On the other two visits, Dr. Arnold's examination of plaintiff's systems was normal, with "lungs clear to auscultation and percussion, no wheezing, rales, or rhonci noted" (R. 241, 246), normal range

motion of the joints (R. 246), and a normal gait (R. 241).  Further, Dr. Arnold did not

prescribe plaintiff any medications or suggest any treatments until the third visit, at which

he gave her samples of Lexapro.  (R. 241).  Dr. Arnold's treatment notes and lack of

treatment supports the ALJ's RFC determination.

Lastly, plaintiff's own testimony supports the ALJ's opinion. She stated that she could

walk for 30-45 minutes indoors before she would have to stop (R. 278), and that she could

lift her 15 pound dog, though she could not do it 3-4 times an hour over an 8 hour day.  (R.

280).  Plaintiff is able to care for her daily needs, and her main reason for her inability to

work is her depression.  (R. 120, 169).  Yet, she readily admits that Prozac improves her

depression (R. 212, 245, 277), and the limitations contained in the Mental RFC Assessments

(Exhibits 6F, 9F-11F) in the record are consistent with the ALJ's mental limitations of "mild-

to-moderate deficiencies of concentration" in his RFC assessment (R. 22), as well as the

mental limitations[1] included in the hypothetical question posed to the vocational expert. (R.

283-84). Upon consideration of the record as a whole, a reasonable person could view this

evidence and conclude that there is substantial evidence to support the ALJ's decision.  See

Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Therefore, substantial evidence

supports the ALJ's RFC determination, and this court must uphold his decision.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the

---

[1] These limitations included mild restrictions in the activities of daily living, moderate restrictions in social functioning, mild to moderate restrictions in persistence, concentration and pace; and no history of deterioration in a work or work-like setting.  (R. 283-84).

Commissioner is supported by substantial evidence and represents a proper application of the

law.  Accordingly, this decision is due to be affirmed.  A separate judgment will be entered.

Done, this 28th day of May, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE